UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WILLIAM ANSON BRADLEY, SR.,**

      **Petitioner,**

                                                Case No. 1:04-cv-479
**v.**                                                Hon.  Wendell A. Miles

**CARMEN PALMER,**

      **Respondent.**

      _____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

      **I.**      **Background**

On February 22, 2001, petitioner pled guilty to one count of first-degree criminal sexual conduct, MCL § 750.520b(1)(b), for which he was sentenced to six to twenty years in prison. *People v. Bradley*, No. 234440 (Mich. App. Dec. 20, 2002), slip op. at 1.

This plea arose from acts committed in 1993 and 1994 against his son and daughter, both of whom were minors. *Id.* Previously, n May 8, 1997, a jury had found petitioner guilty of two counts of first-degree criminal sexual conduct. Judgment of Sentence (docket no. 31). Petitioner had been sentenced to two concurrent sentences of 12 to 30 years. *Id.* The Michigan Court of Appeals then reversed the conviction and remanded for a new trial. *People v. Bradley*, No. 204562 (Mich. App. Aug. 13, 1999).[1] The appellate court agreed with petitioner that the trial court erred

---

[1] Because petitioner's conviction predated the amendment of Const. 1963, art. 1, § 20, which eliminated direct appeals in guilty plea cases, he filed an appeal as of right. *See People v. Bradley*, No.

in precluding him from presenting certain videotaped testimony of his minor daughter. *Id.*, slip op. at 3.

On remand, the prosecutor re-tried petitioner on both counts. *See* docket no. 15. On the fourth day of the second trial, petitioner and the prosecutor reached a plea agreement, which prompted the trial court to hold a plea hearing on that day. *Bradley*, No. 234440, slip op. at 1; Plea Trans. Petitioner pled guilty to engaging "in sexual penetration, oral and/or anal" with his minor son, "on or about and between the dates of November 1, 1993 and July 6, 1994." Plea Trans. at 7-8. At sentencing, the trial court noted that under the applicable sentencing guidelines, petitioner would receive a sentence of 8 to 20 years. Sent. Trans. at 12-13. Under the plea agreement, petitioner received a minimum sentence of 6 years (i.e., 2 years below the guidelines minimum) and a maximum sentence to be set at the discretion of the court. *Id.* at 10-13. Petitioner requested a maximum sentence of 10 years, while the prosecutor requested a maximum sentence of 20 years. *Id.* The court agreed with the prosecutor, and sentenced petitioner to serve a term of not less than 6 nor more than 20 years, with credit for 839 days served previously. *Id.* at 13-14.

Petitioner's appeal of the conviction and sentence was dismissed for want of prosecution. *People v. Bradley*, No. 234440 (Order) (Feb. 8, 2002). Petitioner retained a new appellate attorney, who secured a re-instatement of his appeal. *People v. Bradley*, No. 234440 (Order) (April 16, 2002). However, the appellate court denied petitioner's motion to remand the matter to the trial court for additional proceedings. *Id.* (Order) (June 24, 2002).

---

234440, slip op. at 1.

Petitioner raised the following issues on appeal:

I. Whether [petitioner's] plea of guilty must be set aside as involuntary?

    1. Trial counsel inaccurately represented or misrepresented the plea offer to [petitioner] and applied improper pressure to induce him to plead guilty.

    2. Trial counsel misrepresented the burden of proof, telling [petitioner] he could not "prove his innocence."

    3. There were off the record promises of leniency.

II. Whether [petitioner's] plea of guilty must be set aside because the plea bargain was illusory?

*See* docket no. 33.[2] The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Bradley*, No. 234440.

Petitioner raised the following issues in his application for leave to appeal to the Michigan Supreme Court:

I. Whether the court of appeals' decision upholding [petitioner's] conviction is clearly erroneous in light of the fact that [petitioner] made a factual showing that his guilty plea was involuntary because he had received ineffective assistance of counsel. Because his counsel exerted improper coercion to induce him to plead guilty, misrepresented the burden of proof and because there were off the record promises of leniency.

II. Whether the court of appeals' decision stating the [petitioner's] motion to withdraw his guilty plea was "untimely" is clearly erroneous and is sufficient to foreclose [petitioner's] motion to withdraw his plea.

III. Whether the court of appeals' decision denying [petitioner's] motion to remand for an evidentiary hearing is clearly erroneous when he presented abundant factual evidence of involuntariness to warrant a remand under MCR 7.211(C)(1).

---

[2] Petitioner's statement of errors did not include any sub-issues. However, he presented the sub-issues as arguments in his brief, and the Michigan Court of Appeals addressed those arguments in its opinion.

*See* docket no. 34. The Michigan Supreme Court denied the application. *People v. Bradley*, No. 123358 (Mich. July 28, 2003).

Petitioner filed the present habeas petition raising the following issues:

I. Whether petitioner's guilty plea must be set aside as involuntary?

II. Whether petitioner had ineffective assistance of trial counsel?

III. Whether petitioner had ineffective assistance of his first appellate counsel constituting "cause" for any procedural default?

IV. Whether petitioner should receive an evidentiary hearing?

### II.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Petitioner has met the exhaustion requirement.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

    A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

    A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

    **III.** **Procedural default issue**

    **A.** **Procedurally defaulted claims**

    Respondent contends that petitioner's challenge to his plea is procedurally defaulted because he failed to file a timely motion to withdraw his plea as required under Michigan law. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner

can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Based on the record in this case, the court finds itself faced with resolving a number of preliminary legal questions simply to determine which of petitioner's federal habeas claims are barred by the doctrine of procedural default. Accordingly, in the interests of judicial economy, the court will dispense with a lengthy procedural default analysis and simply review the merits of petitioner's claims.[3]

### IV. Discussion

#### A. Legal standard

A voluntary plea of guilty constitutes an admission of all the material elements of a crime. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." *Id.* In addition, a criminal defendant forecloses all subsequent non-jurisdictional appeals to his conviction by pleading guilty. *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000); *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent

---

[3] "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997). *See also*, *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1089 (E.D. Mich 2004) (given complexity of determining procedural default, court addressed claims on the merits). *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973).

To satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act." *Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991). A valid guilty plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). *See also North Carolina v. Alford*, 400 U.S. 25, 31 (1970). For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259. However, "the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King*, 17 F.3d at 153. Such collateral consequences include a conviction's possible enhancing effect on subsequent sentences, that a conviction on a guilty plea can be used in a subsequent prosecution resulting from a pending investigation, or the details of parole eligibility. *Id*. at 153.

When a state criminal defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id.* A habeas

petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

### B. Petitioner's claims

Petitioner contends that his guilty plea was involuntary because his trial counsel placed "improper pressure" on him to enter the plea. Petitioner's Brief at 13. Petitioner refers to "detailed affidavits of a number of family members who witnessed the representations made by prior counsel incident to the guilty plea, and witnessed prior counsel yelling at [petitioner] that he had to plead guilty." *Id.*

### 1. The plea hearing

A review of the plea transcript demonstrates that petitioner understood his right to a trial by jury, his presumption of innocence, and that "the burden is upon the prosecution to prove your guilt beyond a reasonable doubt." Plea Trans. at 4-5. Petitioner also understood his right to question and cross-examine witnesses, testify on his own behalf and remain silent. *Id.* at 5. The Court also established that his plea was voluntary:

> The Court: Do you further understand that if your plea is accepted here today, you'd be giving up any claim that the plea was the result of promises or threats that were not disclosed at this proceeding or that it was not your own choice to enter this plea?
>
> The Defendant: Yes.

*Id.*

The Court also reviewed the terms of the plea agreement which provided "that upon successful plea and sentence to Count One, the People will dismiss Count Two." *Id.* at 6. The parties agreed to a minimum sentence of six years, with an indeterminate maximum sentence to be

8

set by the court at a later date. *Id.* at 6-7. The prosecutor, defense counsel and petitioner agreed that this was the complete plea agreement. *Id.* The court conducted further inquiry into the voluntariness of the plea:

| | |
|---|---|
| The Court: | Has anybody promised you anything in addition to that? |
| The Defendant: | No, sir. |
| The Court: | What is your plea to Count One? |
| The Defendant: | Guilty. |
| The Court: | Has anybody threatened you in any way to cause you to plead guilty? |
| The Defendant: | No, sir. |
| The Court: | Is it your own choice to plead guilty? |
| The Defendant: | Yes, sir. |
| The Court: | Tell me, then, Mr. Bradley, on or about and between the dates of November 1, 1993, and July 6, 1994, at 540-34th Street, Southwest, Apartment Number 101, city of Wyoming, did you engage in sexual penetration, oral and/or anal, with your son, [the victim]? |
| The Defendant: | Yes. |
| The Court: | All right, and at the time was he at least 13 years old but less than 16 years old? |
| The Defendant: | Yes. |
| The Court: | And he was related to you by blood or affinity to the fourth degree, and he was your, was and is your son, correct? |
| The Defendant: | Yes. |

*Id.* at 7-8.

The Court concluded:

9

| | |
|---|---|
| The Court: | All right, Mr. Bradley, then the Court is satisfied from your testimony here this morning you are in fact guilty.  I do accept your plea of guilty.  I find that it is understanding, voluntary, and accurate. |
| | Either counsel aware of any promises, threats, or inducements other than what's been mentioned on the record? |
| [Prosecutor]: | No, your Honor. |
| [Defense Counsel]: | No, your Honor. |

*Id.* at 9.  Finally, at sentencing, petitioner was aware that his minimum sentence of 6 years was less than the guidelines minimum of 8 years.  Sent. Trans. at 12-14.  Petitioner had an opportunity to make a statement to the court before sentencing, but he declined.  *Id.*

### 2. The Court of Appeals decision

The Michigan Court of Appeals noted that, in the absence of a motion to withdraw the plea and a trial court's decision on the motion, it had no lower court order to review.  *People v. Bradley*, No. 234440, slip op. at 4.  Nevertheless, the court concluded that "as the record of the plea hearing suggests nothing other than a completely knowing, voluntary, and accurate plea from [petitioner], we are not at liberty to consider this issue further."  *Id.*

### 3. Petitioner's claim that his plea was involuntary

Based on the written transcript of the plea hearing, the court agrees with the Michigan Court of Appeals that petitioner's plea was knowing, voluntary, and accurate.  *See Garcia*, 991 F.2d at 326-28.

To place petitioner's plea in context, the court notes that he was not a stranger to the criminal justice system.  In 1997, after a 9-day trial, a jury convicted petitioner of the same two counts of first-degree CSC.  *See* docket nos. 17-25.  Petitioner had experience with Michigan's

10

sentencing guidelines, and the state's scheme of minimum and maximum sentences, having received two concurrent sentences of 12 to 30 years in prison for these convictions. *See* docket no. 31. Petitioner served over two years on these sentences. Petitioner's first appellate counsel, Mr. Joseph H. Doele, secured a reversal of these convictions in 1999. *See People v. Bradley*, No. 204652.

Petitioner's second trial commenced on February 15, 2001. *See* docket no. 15. Petitioner was represented at this trial by Mr. Doele, his successful appellate counsel. Petitioner agreed to plead guilty on the fourth day of his second trial, the day after one of his sons (who was not one of the victims) testified regarding petitioner's sexual abuse of him when he was a child. *See* docket no. 33; Trial Trans. Excerpt (2/21/2001).

Petitioner relies on his affidavits and affidavits submitted by his family members to demonstrate that his plea was not voluntary because counsel coerced or intimidated him to enter the plea. The court has reviewed the affidavits, which present differing perceptions of the meeting that occurred prior to petitioner's guilty plea.

In an affidavit dated March 25, 2002 (more than one year after the trial), petitioner states that his counsel raised the issue of a plea agreement because he "lost favor" with the jury; that counsel explained that if petitioner pled guilty to the CSC charge against his son, the prosecutor would drop the CSC charge against his daughter, and he would get a sentence of 6 years with 2 1/2 years of credit for time served; that petitioner would serve anywhere from 2-3 years in prison and "might not even have to go back to prison at all because the judge had the power to do other things;" that counsel "began yelling at all of us;" that counsel "belittled" petitioner's family as "selfish" because it would "be foolish not to go with 6 years" because "there was a good chance that [petitioner] would die in prison before [he] got out if convicted;" that "it was against my conscience

11

to plead guilty, because I did not do the things charged;" and that the first mention of a possible 20 year sentence was at the podium in front of the judge. Petitioner's Aff. (3/25/2002).[4]

Vernetta Chappell, petitioner's aunt, stated that counsel said that petitioner would serve a maximum sentence of 6 years and "maybe a minimum of only 3 years" under the plea bargain; that petitioner did not want to plead guilty; that one of petitioner's daughters, Michelle McCrae, did not want her father to plead guilty; that counsel "shouted" at Michelle "that she was being very selfish, and that he could get up to life in prison;" that counsel shouted at petitioner "and all of us;" that counsel "intimated that the judge and prosecutor had both agreed that a maximum of 6 years and a minimum of 3 years is what the sentence would likely be;" and that counsel "indicated that [petitioner] might not even have to go back to prison and the sentence might be so light he would simply get credit for time served." Vernetta Chappell Aff. (3/1/2002). When asked about problems posed by petitioner having to register as a sex offender, counsel said that petitioner "would not have that kind of a problem." *Id.* at ¶ 8.

Raymond Chappell, Vernetta's husband, stated that: counsel said that petitioner "would probably get 3-6 years imprisonment, with credit for time served, and that [petitioner] would probably be out after 3 years." Raymond Chappell Aff. (3/15/2002) at ¶ 3. Raymond Chappell stated that, "I do not remember anything being said about 6 years being the minimum sentence." *Id.* at ¶ 4. Raymond Chappell stated that counsel "did appear to threaten [petitioner] with 15-20 years if he did not accept the plea, but he said if he pleaded guilty [petitioner] would have no more than 6 years and probably only 3 after he was given credit for the time he already served." Raymond Chappell Aff. at ¶ 5. Raymond further stated that "[t]he first time I heard any discussion of a 6 to

---

[4] The affidavits are attached as exhibits to the brief in support of the petition. *See* docket no. 2.

20 year sentence was when the judge mentioned in the courtroom while [petitioner] and [counsel] were at the podium." *Id.* at ¶ 7. Mr. Chappell remembered that "[petitioner] backed up at that point, like he was ready to sit down, when the judge mentioned 20 years, but [counsel] put his hand on [petitioner's] back and pushed him forward." *Id.* at ¶ 8.

Petitioner's sister, Emma Pearl Davis, stated that counsel yelled at petitioner's daughter:

> [Petitioner's] daughter, Michelle McCrae, stated that she did not think [petitioner] should plead guilty. At this point, [counsel] yelled at Michelle, saying that she was selfish, and stated that [petitioner] would get no more than six years minus time served if he pleaded guilty.

Emma Davis Aff. at ¶ 7.

Petitioner's daughter, Michelle McCrae, recalled that counsel stated that petitioner would be sentenced to no more than 6 years imprisonment, with credit for 2 1/2 years already served, and that petitioner would have to serve no more than 3 years. Michelle McCrae Aff. (3/22/02). At no time did counsel mention that 6 years was only a minimum sentence or that the maximum sentence would be greater than 6 years. *Id.* However, Ms. McCrae added "[counsel] said if [petitioner] got in trouble while he was in - he would serve the whole time sentenced." *Id.* at ¶ 6.

Petitioner's step-daughter, Jennifer Arnold, testified that she was called into the conference room, and recalled that counsel said that petitioner had two options, "if he pleaded guilty he would get a maximum sentence of 6 years in prison, less time served, and with good behavior, he would be out in 18 months; but, if he went on with the trial, he could get the maximum of 15 years." Jennifer Arnold Aff. (3/21/2002) at ¶ 4. She left with the "definite impression that if [petitioner] pleaded guilty, he would likely be out in 18 months." *Id.* at ¶ 5.

13

Finally, petitioner's wife, Pam Bradley, stated that she was present "during the conversations between [counsel] and [petitioner] relative to pleading guilty;" that she met with counsel, petitioner and various family members in a conference room during a break; that counsel stated that "things looked pretty bleak after [petitioner's] son testified;" that counsel told the family that petitioner "should plead guilty because he did not want to spend the rest of his life in prison;' that there would be "no repercussions" if petitioner pled guilty; and that petitioner would not have to register as a sex offender. Pam Bradley Aff. (3/21/2002) at ¶¶ 1-4. As they left the conference room, it was her "definite impression" that petitioner "would be sentenced to six years with credit for time served." *Id.* at ¶ 5.

Even if the court disregards the inconsistencies in these affidavits, it appears that the affiants believed that petitioner was left with two choices: accept a plea agreement with some restrictions on sentencing, or face a high probability of a conviction which would result in a lengthy incarceration. In addition, the family members understood, to varying degrees, that petitioner would receive a maximum sentence of 6 years with credit for his 2 1/2 years already served.

"Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." *Baker v. United States*, 781 F.2d 85, 92 (6th cir. 1986), *quoting United States v. Crusco*, 536 F.2d 21, 24 (3rd Cir. 1976). "Solemn declarations in open court" made by a criminal defendant during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, a criminal defendants statement on the record "that he had not been coerced or threatened into pleading guilty . . .is strong evidence of the voluntariness of his plea." *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).

14

While petitioner's family members may have been left with a general understanding that he would serve no more than 6 years under the plea agreement, the plea transcript reflects that petitioner understood, and pled guilty to, a plea agreement which included a 6 year minimum sentence. The trial judge made it clear that under the terms of this unwritten agreement, petitioner could receive an indeterminate maximum sentence, and petitioner acknowledged this provision. Plea Trans. at 6-7. The fact that petitioner was faced with difficult, unattractive or distasteful options does not render his guilty plea involuntary. "[A] guilty plea is not rendered involuntary merely because it was entered to avoid harsh alternatives such as prosecution on additional charges." *United States v. Hussey*, 182 Fed.Appx. 150,152-53 (4th Cir. 2006). Given the fact that petitioner had previously been convicted on the same charges, his agreement to plead guilty to one count and serve a single sentence of 6 to 20 years (with credit for 839 days served) appears to have been a reasonable option. This sentence was certainly better than either the sentences imposed in 1997 (two concurrent sentences of 12 to 30 years) or the possibility that, if convicted, he could receive life imprisonment. Under the facts of this case, this plea agreement represented "a voluntary and intelligent choice among the alternative courses of action open to [petitioner]." *Hill*, 474 U.S. at 56.

### 4. Petitioner's claim of ineffective assistance of trial counsel

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington.* 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's

15

deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, (6th Cir. 1998). Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Boone*, 437 F.3d 829, 839 (8th Cir. 2006) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, -- S. Ct. -- (Oct. 2, 2006).

The *Strickland* standard has been adopted and modified in alleged ineffective assistance related to guilty pleas. *See Hill*, 474 U.S. at 57.

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59. It is easier to show prejudice in the guilty plea context because the petitioner needs only to show a reasonable probability that he would have pleaded differently. *Griffin*, 330 F.3d at 737. Thus, while the performance prong of the *Strickland* test remains the same, to establish prejudice the petitioner must show that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial. *See, e.g., Richards v. Million*, No. 02-6277, 2003 WL 21801447 at *3 (6th Cir. Aug. 4, 2003).

Here, petitioner contends that counsel was ineffective because: (1) trial counsel inaccurately represented or misrepresented the plea offer; and (2) trial counsel misrepresented the burden of proof, telling petitioner he could not "prove his innocence."[5]  Even if the court assumes that petitioner's claims are factually accurate, he was not prejudiced by these actions. First, as previously discussed, and as demonstrated by the plea transcript, the plea agreement never included a six-year maximum sentence. Even if counsel inaccurately represented the plea offer as including a six-year maximum sentence, the plea agreement as articulated by the parties at the plea hearing included a six-year minimum sentence, with a maximum sentence to be set by the court. The record reflects that petitioner was fully aware of the terms of the plea agreement before he entered the guilty plea.

Second, petitioner's claim, that he was prejudiced because he relied upon counsel's "fundamental misconception of the presumption of innocence enshrined in the Fifth and Fourteenth Amendments," is disingenuous.  Petitioner's claim is based upon counsel's comments, which petitioner recounts as follows:

> On the day prior to my guilty plea, several witnesses testified. The next morning, [counsel] took me and my family into the conference room. He told us, "I've lost favor with the jury and I'm not going to be able to prove you're innocent. It is in your best interests to plead guilty." I said, "I thought I was innocent until proven guilty." [Counsel] then stated, "Not in all cases," and asked if I would consider a plea bargain.

---

[5] Petitioner does not assert a third ground raised in the state courts, i.e., that there were "off the record" promises of leniency.

Petitioner's Aff. at ¶ 3. Only one other family member recalled a discussion regarding the presumption of innocence. In a supplemental affidavit, Mr. Chappell stated that he recalled counsel telling petitioner that "[b]ecause of [petitioner's son's] testimony, [counsel] could not prove [petitioner] was innocent." Raymond Chappell Supp. Aff. (3/25/2002).

Petitioner was well aware of the presumption of innocence and the government's burden of proof when he entered his plea. Plea Trans. at 4-5. Contrary to petitioner's contention, counsel's comment did not constitute a "fundamental misconception" of constitutional law. Rather, counsel's comment appears to be a blunt assessment of the damaging trial testimony, and to alert petitioner that, in counsel's opinion, the government had presented sufficient evidence to overcome his presumption of innocence. It is incredible to believe that petitioner, who participated in a 9-day jury trial in 1997, raised a successful appeal and then underwent a second jury trial on the same charges, would be mis-lead by counsel's comment.

Accordingly, petitioner's claim of ineffective assistance of counsel is without merit.

### 5. Petitioner's claim of ineffective assistance of appellate counsel

Petitioner raises this claim to demonstrating cause for his procedurally defaulted claims, which, in turn, would enable the court to address the merits of his claims. As previously discussed, the court did not find any of petitioner's claims precluded by the procedural default doctrine. Rather, the court resolved petitioner's claims on the merits and it is unnecessary to address this claim.

### 6. Evidentiary hearing

Finally, petitioner's request for an evidentiary hearing should be denied. Evidentiary hearings are not mandatory in § 2254 cases, but are held at the discretion of the court. *See Vroman*

*v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). After reviewing the transcripts, the affidavits submitted by petitioner and his family, and other documents, the court has found no constitutional infirmity in petitioner's guilty plea. While petitioner desires an evidentiary hearing, he points to no additional evidence that would be presented at the hearing. Thus, an evidentiary hearing would serve no purpose in this instance. *See McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (evidentiary hearing would be futile where the present record appears to be complete and the petitioner points to no fact that he could develop on remand that would result in the granting of the writ). *Cf. Blackledge*, 431 U.S. at 71 ("[t]o allow indiscriminate hearings in federal postconviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. § 2241-2254, would eliminate the chief virtues of the plea system -- speed, economy and finality").

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  June 14, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                                Hugh W. Brenneman, Jr.
                                                                United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).